**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TERRANCE HAYS,

Plaintiff,

v. Case No. 8:26-cv-1780-KKM-NHA

EQUIFAX INFORMATION SERVICES LLC,

Defendant.

---

**ORDER**

Plaintiff Terrance Hays sues credit reporting agency Equifax Information Services, LLC, under the Fair Credit Reporting Act (FCRA) for failing to " 'clearly and accurately' disclose all information in [his] file at the time of his request[.]" Compl. (Doc. 1-1) at ¶ 11. On June 25, I directed Hays to show cause as to why this Court does not lack subject-matter jurisdiction over his FCRA claim. *See* (Doc. 12). Upon review of Hays's response to the order, Resp. (Doc. 13), I conclude that he does not sufficiently allege Article III standing and so I remand this action for lack of jurisdiction.

To satisfy Article III's standing requirements, a plaintiff must allege that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable

judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A "bare procedural violation, divorced from any concrete harm, [cannot] satisfy the injury-in-fact requirement of Article III." *Id.* at 341; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 441–42 (2021). In other words, "a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.' " *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 997 (11th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 341).

For an alleged informational injury, a plaintiff must identify " 'downstream consequences' from failing to receive the required information." *TransUnion*, 594 U.S. at 442 (quoting *Trichell*, 964 F.3d at 1004). Such consequences include "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425. Traditionally, courts recognized "reputational harm" as a cognizable injury. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1244 (11th Cir. 2022) (en banc). "[F]alse" or "misleading" credit reports "can lead to [a cognizable] reputational harm if publicized." *Id.* So, a plaintiff likely has standing if "the alleged information deficit hindered [his] ability to correct erroneous information before it was later sent to third parties." *TransUnion*, 594 U.S. at 442. But "no reputational harm at all occurs when [false or misleading] information is kept private." *Hunstein*, 48 F.4th at 1244.

As relevant here, 15 U.S.C. § 1681g(a)(1) provides that "[e]very consumer reporting agency shall, upon request, and subject to section 1681(h)(a)(1) of this title, clearly and accurately disclose to the consumer: All information in the consumer's file at the time of the request." Hays alleges that, although he requested his consumer file, "Equifax's Disclosure omitted significant amounts of information contained in [his] credit file," Compl. ¶ 12, such as "all but the last four digits of" certain account numbers, *id.* ¶ 21, and mislabeled some accounts as "credit account[s]," *id.* ¶ 15. According to Hays, the "lack of accurate, full account numbers caused [him] great frustration and emotional distress while trying to understand his credit report and verify it against his own records." *id.* ¶ 32.

Hays does not sufficiently allege adverse consequences flowing from Equifax's alleged statutory violation of FCRA's disclosure requirement to establish Article III standing. To be sure, Hays is right that FCRA's "disclosure . . . requirements are designed to protect consumers' interests in learning of any inaccuracies in their credit file so that they can promptly correct the files before they are disseminated to third parties." *TransUnion*, 594 U.S. at 440. But Congress has not explained "how a technical impairment of a consumer's ability to monitor a credit report—that carries no actual consequences for the consumer—rises to the level of an Article III injury." *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 467 (6th Cir. 2019). Ultimately, Hays

still must allege either disclosure of inaccurate information to third parties or a sufficient risk thereof based on his inability to review his full credit file. *See Nelson v. Experian Info. Sols. Inc.*, 144 F.4th 1350, 1354–57 (11th Cir. 2025).

Hays's efforts of "playing detective" as to the accuracy of his own file, Compl. ¶ 26, and the "great frustration and emotional distress" he alleges he suffered when "trying to understand his credit report and verify its accuracy against his own records," Compl. ¶ 32, do not amount to concrete and particularized harm under Article III. "[S]pending money and time attempting to correct errors on a credit report that has not been published to a third party or otherwise affected a plaintiff fails to satisfy the standing requirements of Article III." *Nelson*, 144 F.4th at 1352. Rather, "any assertion of wasted time and effort necessarily rises or falls along with . . . whether the risk posed by . . . [the statutory] violation, as pleaded by [the plaintiff], is itself a concrete harm." *Id.* at 1354–55 (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 931 (11th Cir. 2020) (en banc)). To the extent that pre-*Nelson* cases recognized "emotional distress and time [the plaintiff] spent contesting the inaccurate information" as a concrete injury, *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021), even those cases reasoned that a plaintiff must allege that the distress or time relates to an inaccuracy that has, or will, cause harm, *see Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017) (concluding that "lost time" disputing a credit inaccuracy was a concrete injury

in part because the plaintiff's "credit score dropped 100 points as a result of the challenged conduct").

Hays cites no controlling authority to the contrary. The sole Eleventh Circuit opinion that Hays uses to support his standing argument, *Santos*, speaks only to "inaccurate[] report[ing] *to creditors*." *Santos v. Healthcare Rev. Recov. Grp., LLC*, 90 F.4th 1144, 1151 (11th Cir. 2024) (emphasis added). It does not apply here because Hays does not allege that Equifax inaccurately reported on him to third parties. To the contrary, Hays concedes that, "[w]hen Equifax produces and sells reports regarding [him] to third parties, the full account numbers and names of the original creditors are included in its reports," thereby "demonstrat[ing] its ability to comply with 15 U.S.C. § 1681g(a)." Compl. ¶¶ 23–24.

At bottom, Hays does not allege that he has suffered, or will suffer, loss of credit opportunities based on the file's disclosure or his inability to verify the missing or inaccurate information against his own records. Insofar as Hays claims that Equifax's violation "impair[s] his ability to exercise his statutory rights," Resp. at 6, he fails to identify a "close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," *Spokeo*, 578 U.S. at 341 (citation omitted). Hays therefore does not allege a concrete harm that satisfies Article III's standing requirements.

Finally, Hays urges the Court to award him "fees and costs associated with [Equifax's] improper removal" if the Court "remand[s] the case back to that state court from which it was properly removed." Resp. at 8. When a court remands a case to state court, it may award attorney's fees, costs, and expenses incurred as a result of the removal "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) (citing 28 U.S.C. § 1447(c)). Hays cannot simultaneously argue that removal is "proper" while also arguing that he deserves fees because Equifax's removal lacked an "objectively reasonable basis." *Compare* Resp. at 1, 3–7 (arguing that removal is proper) *with* Resp. at 8 (arguing that fees are warranted). In any event, although Hays' standing theory is deficient, Equifax had an objectively reasonable basis for believing removal to be proper in the light of this Court's federal-question jurisdiction.

Accordingly, the following is **ORDERED**:

1. The Clerk is directed to **REMAND** this action to the County Court of the Tenth Judicial Circuit in and for Polk County, Florida, and to transmit a certified copy of this order to the clerk of that court.
2. The Clerk is further directed to **TERMINATE** any pending motions or deadlines and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, August 17, 2026.

Kathryn Kimball Mizelle
United States District Judge